UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRUCE D. SNOVER,

      Plaintiff,

v.

ANDREW SAUL,
COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

Case No. 2:20-cv-11564
District Judge Victoria A. Roberts
Magistrate Judge Kimberly G. Altman

_____/

## REPORT AND RECOMMENDTION ON CROSS MOTIONS FOR SUMMARY JUDGMENT

### I.     Introduction

This is a Social Security case.  Plaintiff Bruce D. Snover brings this action under 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") under the Social Security Act ("the Act").  Both parties have filed summary judgment motions (ECF Nos. 13, 14), which have been referred to the undersigned for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B).

1

For the reasons set forth below, it is RECOMMENDED that Snover's motion (ECF No. 13) be GRANTED, that the case be remanded under sentence four of 42 U.S.C. § 405(g), and that the Commissioner's motion (ECF No. 14) be DENIED.

## II.     Background

### A.     Procedural History

Snover was 51 years old at the time of the August 18, 2016 amended alleged onset date.  (ECF No. 11, PageID.72).  He worked previously as a consultant, operations manager, and security guard.  (*Id*., PageID.266).  He alleges disability due to stage three rectal cancer, diabetes, and hypertension.  (*Id*., PageID.264).

After Snover's SSI and DIB applications were denied at the initial level on June 12, 2017 (*Id*., PageID.130), he timely requested an administrative hearing, held March 11, 2019 before Administrative Law Judge ("ALJ") Stephanie Katich.  (*Id*., PageID.67).  Snover testified by videoconference from Mount Pleasant, Michigan.  (*Id*., PageID.70-97).  A vocational expert ("VE") also testified.  (*Id.*, PageID.98-112).

 Snover offered the following testimony.

He assented to the ALJ's statement that he underwent radiation, chemotherapy, and a colostomy for rectal cancer and also experienced peripheral neuropathy.  (*Id*., PageID.70).  He stood 5' 5 ½ and weighed 235 pounds.  (*Id*.,

PageID.72).  He experienced pain in all extremities due to peripheral neuropathy. (*Id.*).  He was unable to stand or walk for more than one hour at a time due to leg numbness.  (*Id.*, PageID.73).  He typically fell asleep after sitting for more than one hour.  (*Id.*).  He did not experience daytime fatigue before undergoing cancer treatment.  (*Id.*, PageID.89).  He was unable to use a CPAP device prescribed for sleep apnea.  (*Id.*, PageID.74).  He typically smoked marijuana before bedtime to help him relax.  (*Id.*, PageID.94).  He did not require the use of a cane or walker. (*Id.*, PageID.75).  He had health insurance but skipped medical appointments due to his inability to pay the deductible.  (*Id.*, PageID.75-76).  He was unable to walk more than one-and-a half miles before requiring a rest.  (*Id.*, PageID.39).  He took two-hour naps most days.  (*Id.*, PageID.77).  He was able to lift two gallons of milk at a time.  (*Id.*).  He was able to use his hands to drive, eat, and perform personal care but occasionally dropped glasses due to hand numbness.  (*Id.*, PageID.78).  He was able to prepare simple meals and perform limited household chores but could no longer perform any yardwork.  (*Id.*, PageID.78-79, 92).  He was unable to work due to the inability grip, stand on his feet for extended periods, or concentrate for long periods.  (*Id.*, PageID.79).  He was no longer able to concentrate for the length of a movie.  (*Id.*, PageID.90).  In his most recent job, he was required to lift and carry up to 150 pounds. (*Id.*, PageID.81).

3

Snover experienced arm and leg numbness with "pins and needles" sensations after undergoing chemotherapy. (*Id*., PageID.86). He experienced limited relief from prescribed medication. (*Id*., PageID.88). He was able to complete grocery chores by using the cart for support. (*Id*., PageID.87).

On April 1, 2019, the ALJ determined that Snover was not disabled. (*Id*., PageID.49-60). On April 17, 2020, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (*Id*., PageID.38-40). Snover timely filed for judicial review of the final decision on June 15, 2020. (ECF No. 1).

## B.   Medical Evidence

July 2016 records note Snover's report of leg pain. (*Id*., PageID.440). August 2016 records note a recent diagnosis of carcinoma of the rectum. (*Id*., PageID.410, 420, 585). The following month, Snover began a pre-operative course of chemotherapy and radiation. (*Id*., PageID. 496). In November 2016 Snover reported that his activities were not limited by ongoing chemotherapy. (*Id*., PageID.617). The following month, Snover reported that he was able to "go hunting with a pump" the previous month. (*Id*., PageID.619). Snover noted the side effect of hand coldness but that his activities were not limited by treatment. (*Id*., PageID.621).

4

In January 2017, Snover reported mild fatigue but that he was able to perform his regular activities. (*Id*., PageID.663). February 2017 records note moderate fatigue but no limitation in activities. (*Id.*, PageID.673, 676). The following month, he reported muscle and joint aches interfering with his activities. (*Id*., PageID.685, 688). He both denied syncope or hand or foot numbness but later in the month reported that neuropathy of the hands and feet caused discomfort. (*Id*., PageID.736, 746). Pre-operative records from the same month state that Snover should expect a three to eight-day hospital stay and "a recovery period of six to eight weeks." (*Id*., PageID.745). On May 7, 2017, Snover underwent a robotic abdominoperineal resection with end colostomy. (*Id*., PageID.750). Treating records state that Snover tolerated the procedure well. (*Id*., PageID.780).

On May 22, 2017, Snover reported "ongoing pains in his arms, back and legs accompanied by numbness, worse since finishing chemoradiation." (*Id*., PageID.1120). He reported that his fatigue was improving. (*Id.*). The extremity symptoms were possibly attributed to diabetic neuropathy. (*Id.*, PageID.1123).

On June 12, 2017, Dale Blum, M.D. performed a non-examining review of the medical evidence from April 2014 to May 2017 on behalf of the SSA. (*Id*., PageID.122-124). He found insufficient evidence to show the existence of work-related impairment before July 2016. (*Id*., PageID.123). For the period between July 1, 2016 forward, he noted the diagnosis of rectal cancer. (*Id.*). He cited post-

operative records noting that the margins surround the incision site were cancer free. (*Id.*).  He observed that as of June 12, 2017, the transcript did not contain a medical opinion. (*Id.*, PageID.125).  Dr. Blum found that Snover could lift 20 pounds occasionally and 10 frequently; sit, stand, or walk for six hours in an eight-hour workday; and perform limited pushing/pulling in the upper and lower extremities. (*Id.*, PageID.125).  He found that Snover could climb, stoop, and crawl occasionally but could balance, kneel, and crouch frequently. (*Id.*, PageID.126).  He limited Snover to frequent handling, fingering, and feeling. (*Id.*, PageID.126).  He found that Snover should avoid concentrated exposure to vibration. (*Id.*, PageID.127).

On July 3, 2017, Snover reported "ongoing moderate to severe pains in his arms and legs accompanied by numbness" to oncologist Oxana Rusher, M.D.  On July 31, 2017, Dr. Rusher completed a medical source statement, noting that as a result of cancer treatment, Snover experienced muscle pain and numbness of the upper and lower extremities with swelling of the feet. (*Id.*, PageID.822).  She found that the condition could be expected to last at least 12 months. (*Id.*, PageID.822).  She found that Snover would be required to take eight to nine unscheduled breaks in an eight-hour workday with each lasting at least one hour. (*Id.*, PageID.823).  She found that he would be off task 20 percent of the workday

6

due to physical symptoms and would miss more than four days of work each month.  (*Id.*).

In August and September 2017, Snover reported "severe pains in . . . arms and legs accompanied by numbness" which had worsened since finishing radiation treatment.  (*Id.*, PageID.1093, 1142).  In October 2017, Snover reported continued neuropathy in all extremities.  (*Id.*, PageID.1084).  He reported that the pain and numbness was reduced but not eliminated with an increased dose of Gabapentin. (*Id.*).  In December 2017 and in the next few months, Snover reported peripheral neuropathy to a treating source.  (*Id.*, PageID.1170, 1184, 1187).  He reported that he was unable to afford blood sugar strips due to unemployment and thus, was not monitoring his blood sugar levels.  (*Id.*, PageID.1170, 1177).

January, April, July and October 2018 records note "persistent" pain and numbness in all extremities, "exacerbated by uncontrolled diabetes" (*Id.*, PageID.1013, 1016-1017, 1027, 1030, 1048, 1051, 1064).  March and July 2018 records by a family care provider also note a diagnosis of uncontrolled diabetes. (*Id.*, PageID.1300, 1304, 1308).  October 2018 records state that Snover was making dietary changes to combat diabetes.  (*Id.*, PageID.1152).  January 2019 records note Snover's report of "persistent" neuropathy in all extremities limiting function.  (*Id.*, PageID.992, 995).

III.    Framework for Disability Determinations (the Five Steps)

Under the Act, DIB and SSI are available only for those who have a "disability."  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, No. 08-10279, 2008 WL 4793424, at *4 (E.D. Mich. Oct. 31, 2008), citing 20 C.F.R. § 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  "The burden of proof is on the claimant throughout the first four steps. . . .  If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [Commissioner]."  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Snover was not disabled under the Act.  At Step One, the ALJ found that Snover had not engaged in substantial gainful activity since the (amended) alleged onset date of August 18, 2016.  (ECF No. 11, PageID.51).  At Step Two, the ALJ found that he had the severe impairments of "status post invasive rectal adenocarcinoma (treated with chemotherapy, chemoradiation, and abdominoperineal resection with end colostomy), peripheral neuropathy of the upper extremities and lower extremities, diabetes mellitus, obesity, and asthma" (*Id.*).  At Step Three, the ALJ found that Snover's impairments, whether considered alone or in combination did not meet or medically equal a listed impairment.  (*Id.*, PageID.54).

The ALJ then assessed Snover's residual functional capacity ("RFC"), concluding that he was capable of performing light work with the following additional limitations:

> [H]e can frequently push and pull with his upper extremities and lower extremities and he can frequently handle, finger, and feel with his upper extremities. He cannot climb ladders, ropes, or scaffolds and he can only occasionally climb ramps and stairs, stoop, and crawl. He can also frequently balance, kneel, and crouch. He further needs to avoid concentrated exposure to vibration (including vibrating surfaces and hand tools), unprotected heights, open flames, large bodies of water, and slippery, wet, or uneven surfaces, as well as concentrated exposure to fumes, odors, dust, gases, and other similar respiratory irritants.

(*Id.*, PageID.55).

At Step Four, the ALJ found that Snover could perform his past relevant work as a security guard. (*Id.*, PageID.58). Citing the VE's testimony, the ALJ found alternatively at Step Five that Snover could perform the light, unskilled jobs of inspector (175,000 jobs in the national economy), small parts assembler (230,000), and stock checker (125,000). (*Id.*, PageID.60). As a result, the ALJ concluded that Snover was not disabled under the Act. (*Id.*).

## IV. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision under 42 U.S.C. § 405(g). Although the court can examine portions of the record that were not evaluated by the ALJ, *Walker v. Sec. of Health & Hum. Servs.*, 884 F.2d 241, 245 (6th Cir. 1989), its role is a limited one. Judicial review is constrained to deciding whether the ALJ applied the proper legal standards in making his or her decision, and whether the record contains

10

substantial evidence supporting that decision. *Tucker v. Comm'r of Soc. Sec.*, 775

F. App'x 220, 224–25 (6th Cir. 2019)); *see also Bass v. McMahon*, 499 F.3d 506,

509 (6th Cir. 2007) (noting that courts should not retry the case, resolve conflicts

of evidence, or make credibility determinations); *Biestek v. Comm'r of Soc. Sec.*,

880 F.3d 778, 783 (6th Cir. 2017)(same).

     An ALJ's factual findings must be supported by "substantial evidence." 42

U.S.C. § 405(g). The Supreme Court has recently explained what that term means:

> Under the substantial-evidence standard, a court looks to an existing
> administrative record and asks whether it contains sufficient evidence
> to support the agency's factual determinations. And whatever the
> meaning of substantial in other contexts, the threshold for such
> evidentiary sufficiency is not high. Substantial evidence, this Court has
> said, is more than a mere scintilla. It means—and means only—such
> relevant evidence as a reasonable mind might accept as adequate to
> support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotations omitted).

     In making "substantial evidence" the relevant standard, the law preserves the

judiciary's ability to review decisions by administrative agencies, but it does not

grant courts the right to review the evidence de novo. *Moruzzi v. Comm'r of Soc.*

*Sec.*, 759 F. App'x 396, 402 (6th Cir. 2018) ("The substantial-evidence standard . .

. presupposes that there is a zone of choice within which the decisionmakers can go

either way, without interference by the courts.") (quoting *Blakley v. Comm'r of*

*Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009)). An ALJ's factual findings are

11

therefore subject to multi-tiered review, but those findings are conclusive unless the record lacks sufficient evidence to support them. *Biestek*, 139 S. Ct. at 1154.

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley*, 581 F.3d at 406 (internal quotations omitted). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (internal quotations omitted).

## V.    Analysis

Snover presents two arguments in favor of summary judgment. (ECF No. 13). First, he argues that the RFC crafted by the ALJ did not reflect his full degree of limitation resulting from peripheral neuropathy of the lower extremities. (ECF No. 13, PageID.1356). The  Commissioner responds that substantial evidence supports the ALJ's finding that Snover could perform exertionally light work,

12

citing the evidence relied upon by the ALJ to support the RFC.  (ECF No. 14, PageID.1370).  Second, Snover faults the ALJ for failing to consider whether he was disabled for a closed period of 12 months or more, arguing (in effect) that the ALJ failed to consider the effects of chemotherapy, radiation, surgery, and the long-term effects of radiation in making the non-disability finding.  (ECF No. 13, PageID.1358).  In response to Snover's "closed period" argument, Commissioner contends that Snover's diagnosis of rectal cancer and ensuing treatment lasted less than one year.  (ECF No. 14, PageID.1376-77).

In reply, Snover argues for the first time that the vocational job testimony given at the administrative hearing was not supported by substantial evidence. (ECF No. 15).  "[A] reply brief is not the proper place to raise new arguments."  *Palmer v. Comm'r of Soc. Sec.*, No. 1:17-cv-577, 2018 WL 4346819, at *7 (W.D. Mich. Aug. 9, 2018) (*citing Bormuth v. City of Jackson,* 870 F.3d 494, 500 (6th Cir. 2017)), *report and recommendation adopted*, 2018 WL 4334623 (W.D. Mich. Sept. 11, 2018).  Moreover, because the undersigned recommends a remand for further fact-finding on related grounds, Snover is not prejudiced by his counsel's failure to raise this argument in his motion for summary judgment.

### A.   Residual Functional Capacity for Light Work

Snover disputes the conclusion that he could perform the standing and walking requirements for exertionally light work.  (ECF No. 13, PageID.1356).

13

In determining a claimant's RFC, it is necessary to consider (1) objective medical evidence as well as (2) subjective evidence of pain or disability. 20 C.F.R. §§ 404.1545(a)(1); 416.945 (RFC must be based on all "relevant evidence"). The "RFC is to be an 'assessment of [a claimant's] remaining capacity for work' once her limitations have been taken into account." *Howard v. Comm'r of Soc.l Sec.*, 276 F.3d 235, 239 (6th Cir. 2002). In crafting the RFC, the ALJ must consider the restrictions alleged by the claimant. §§ 404.1545(b-d); 416.945; SSR 96-8p, 1996 WL 374184, at *6 (July 2, 1996). "Although a function-by-function analysis is desirable, SSR 96–8p does not require ALJs to produce such a detailed statement in writing." *Delgado v. Comm'r of Soc. Sec.*, 30 Fed.Appx. 542, 547–548, 2002 WL 343402, at *5 (6th Cir. March 4, 2002) (internal citations omitted). "[T]he ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record." *Id.*

Snover's argument that the RFC is not supported by substantial evidence centers on his alleged inability to perform the walking requirements of light work.[1] Exertionally light work is defined by 20 C.F.R. § § 404.1567(b)and416.967(b):

---

[1]Snover's related argument that the RFC for light work put "no" limitations on his ability to stand and walk is not borne out by SSR 83-10, 1983 WL 31251 (1983), which states that while light work "requires a good deal of walking," *id.* at *5, for "most medium jobs," (aside from the baseline requirement of six hours walking or standing) *being on one's feet for most of the workday is critical.*" *Id.* at *6.

> [L]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

*See also* SSR 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983) (same).

In support of the RFC for light work, the ALJ adopted Dr. Blum's June 12, 2017 non-examining assessment that Snover could walk or stand for about six hours in an eight-hour workday. (ECF No.11, PageID.55, 58). She also noted that Snover's cancer treatment subsequent to the May 2017 surgery was limited to monitoring and that the subsequent records did not show a recurrence of cancer. (*Id.*, PageID.58). She cited the post-surgical records showing no muscle atrophy or need for an assistive device. (*Id.*). She noted the lack of neurological deficits "other than some decreased sensation in his hands and feet," and Snover's ability to engage in the activities of driving, preparing simple meals, caring for his personal needs, and the ability to handle his finances. (*Id.*). She noted that Dr. Blum, a State Agency physician, "[had] been specifically trained in evaluating impairments for the Social Security Administration's disability programs." (*Id.*).

---

(Emphasis added). Thus, the finding that Snover was limited to light work reflects some degree of limitation.

15

She gave "no weight" to Dr. Rusher's July 31, 2017 treating opinion that Snover experienced disability level limitation. (*Id*., PageID.57).

The ALJ's adoption of Dr. Blum's June 12, 2017 assessment and the ultimate finding that Snover was capable of walking or standing for six hours in an eight-hour workday is problematic for multiple reasons. First, Dr. Blum's findings did not have the benefit of any of the treating records created between June 2017 and January 2019. As a rule, "updated" medical records are to be accorded more weight than older ones. *See Brooks v. Comm'r of Soc. Sec.*, 531 Fed. App'x 636, 642 (6th Cir. 2013) (ALJ's adoption of non-examining source's earlier opinion over the more recent examining findings grounds for remand). To be sure, the adoption of the older records over newer ones does not automatically constitute error provided that the ALJ gives some indication that she considered the more recent evidence. Courts "require 'some indication that the ALJ at least considered these new facts before giving greater weight to an opinion that is not based on a review of a complete case record.'" *Brooks*, at 642 (*quoting Blakley*,at 409 (6th Cir. 2009)) (internal citations omitted).

While the ALJ purportedly addressed the records post-dating Dr. Blum's assessment, she gave short shrift to the treating records pertaining to peripheral neuropathy of the lower extremities. For example, while the ALJ noted that the cancer remained in remission and that Snover did not require emergency treatment,

16

these observations do not undermine his claim that he was unable to walk or stand for six hours a day five days a week due to neuropathy.  The ALJ's finding that Snover did not experience "significant neurological deficits (other than some decreased sensation in his hands and feet)" grossly understates (if not misstates) the treating records from July 2017 forward showing significant and persistent symptoms of lower extremity pain and numbness: July 2017, "moderate to severe" leg pain and numbness; August and September 2017, "severe pains" of the legs accompanied by numbness; October 2017, increased dose of Gabapentin afforded only limited improvement in neuropathy; December 2017 and March 2018, reports to a non-oncological source of significant neuropathy; January, April, and October 2018, "persistent" pain and numbness "exacerbated by uncontrolled diabetes;" January 2019,  "persistent" neuropathy limiting function.

Moreover, the ALJ accord of "no weight" to Dr. Rusher's July 31, 2017 treating opinion that Snover experienced disability level pain and numbness of the lower extremities as a result of the cancer treatment is neither adequately explained nor well supported.  For claims filed before March 27, 2017, such as here, the opinion of a treating physician is entitled to presumptive deference if "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and "not inconsistent with the other substantial evidence."  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) 20 C.F.R. §§ 404.1527(c)(2),

416.927; SSR 96–2p, 1996 WL 374188, at *5 (1996).  While  Dr. Rusher's opinion states that she treated Snover from September 2016 forward, the ALJ commented only that Snover "saw" Dr. Rusher at University of Michigan hospital.  (ECF No. 11, PageID.58).  The ALJ did not identify Dr. Rusher as a treating source, much less recognize that her opinion was entitled to presumptive deference.

The ALJ's failure to acknowledge Dr. Rusher's status as a treating oncologist is more than an articulation error.  Dr. Rusher was certainly aware that Snover's peripheral neuropathy, first reported in April 2017 after chemoradiation, is a relatively common side effect of cancer treatment.  Cancer.gov states that "Some cancer treatments cause peripheral neuropathy, a result of damage to the peripheral nerves."[2]  Side effects include "tingling, numbness, or a pins-and-needles feeling in your feet and hands that may spread to legs and arms."  *Id*.  *See also* Healthline.com ("[A]bout 30 to 40 percent" of individuals undergoing chemotherapy develop chemotherapy induced peripheral neuropathy.  "It's one of the reasons that some stop cancer treatment early").[3]  Dr. Rusher's opinion that the chemoradiation side effects would be expected to last at least 12 months is wholly

---

[2] https://www.cancer.gov/about cancer/treatment/side-effects/nerve-problems. (Last visited July 8, 2021).

[3] https://www.healthline. com/health/cancer/neuropathy-from-chemo.  (Last visited July 7, 2012).

consistent with the records from July 2017 forward showing that Snover experienced the condition to at least January 2019.

The administrative determination elsewhere skirts the significance of the post-chemotherapy neuropathy. The ALJ twice noted that Snover was able to perform his activities of daily living "without difficulty" over the course of treatment. (ECF No. 11, PageID.57-58). While she is correct that the treating records from September 2016 to early March 2017 support this finding, the treating records from March 2017 forward show that Snover experienced neuropathy of the hands and feet. (*Id*., PageID.736, 746). As discussed above, the treating records from March 2017 to January 2019 state consistently that Snover's functional abilities were significantly curtailed by neuropathy.

Likewise, while the ALJ noted twice in her opinion that Snover did not require the use of an assistive device and was able to walk up to one-and-a-half miles at a time (ECF No. 11, PageID.55, 57-58), she did not acknowledge Snover's testimony that he performed the walking while grocery shopping and relied on the grocery cart for support. (*Id.*, PageID.76, 87). *See Alford v. Saul*, 417 F. Supp. 3d 125, 145, fn 20 (D. Conn. 2019) ("[A] wheelchair, like a shopping cart, effectively functions as an assistive device for ambulation to the one pushing it."). While the ALJ was not required to find *per se*, that the shopping cart acted as an assistive device, under the applicable regulations she was required to consider the "relevant

19

factors" in determining the strength of Snover's claims, including "[a]ny measures [used] to relieve . . . pain or other symptoms (*e.g.*, lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, *etc.*)." 20 C.F.R. §§ 404.1529(c)(3)(vi), 416.929(c)(3). Snover's report that he needed to lean against a grocery cart while walking significant distances qualifies as a measure used to relieve discomfort. While in support of the non-disability ALJ noted twice that Snover did not require an assistive device and that he could walk up to one-and-a-half miles, she did not acknowledge that he leaned against a grocery cart while performing his most strenuous walking activities. These omissions, coupled with errors discussed above, warrant a remand for further consideration.

## B.    Disability for a Closed Period

Snover argues second that the ALJ erred by failing to consider the effects of chemotherapy treatment on his ability to hold full-time work. (ECF No. 13, PageID.1358). He faults the ALJ for rejecting Dr. Rusher's July 2017 opinion that "impairments or treatment" would cause him to be absent from work more than four days every month. (*Id.*, PageID.1369-60). He argues that the ALJ erred by failing to determine that he was disabled for a portion of the relevant period for at least 12 months. (*Id.*, PageID.1360). The Commissioner argues that the ALJ's finding that Snover was able to engage in daily activities over the course of the entire treatment is well supported and explained. (ECF No.14, PageID.1376-78).

20

The Commissioner contends that the ALJ's statement that Snover was not disabled between August 18, 2016 through the date of the administrative decision is sufficient to show that she considered whether Snover was disabled for any portion of the period under consideration. (*Id.,* PageID.1378).

Snover is correct that an ALJ is required to consider whether a claimant is disabled for any 12-month or longer period within the time frame under consideration. "In determining whether [a claimant] is entitled to disability benefits, it is also necessary to consider every [12-month] period during which Snover may have been disabled." *Pena v. Barnhart*, No. 01 Civ. 502, 2002 WL 31487903, *11 (S.D.N.Y. October 29, 2002); 42 U.S.C. § 423(d)(1)(A). *See also Reed-Barnes v Comm'r of Soc Sec*, No. 17-CV-12313, 2018 WL 1586486, at *4 (E.D. Mich. April 2, 2018) (Friedman, J.) (ordering a remand for determination of whether the plaintiff was entitled to benefits for at least a 12-month period within the period of alleged disability).

As discussed above, the ALJ provided an adequate rationale for her finding that Snover was not disabled between August 16, 2016 and the early part of March 2017. However, the actual period under consideration did not end until April 1, 2019. The records from March 2017 forward showing severe and chronic lower extremity peripheral neuropathy undermine the finding that Snover was capable of exertionally light work. The question of whether Snover could perform light work

21

is particularly critical given that he was 54 at the time of administrative determination. Under the "Grids," an individual between the ages of 50 and 55 is categorized as an individual "closely approaching advanced age."  A finding that he was unable to perform any of his past relevant work and was limited to unskilled, sedentary work (requiring only two hours of standing and walking in an eight-hour workday) would direct a finding of disability.  20 C.F.R. part 404, subpart P, App. 2, Rule 201.14.[4]

For these reasons, a remand is required for reconsideration of the exertional requirements stated in the RFC, discussion of the effect of neuropathy on Snover's post-chemotherapy exertional abilities, and consideration of whether the record supports an award of benefits for any 12-month period or more within the relevant period.  Notwithstanding that the non-disability determination does not accurately reflect the record, an award of benefits is premature.  A remand for an award of benefits is appropriate "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits."  *Faucher v. Sec'y of Health & Hum. Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

---

[4] A vocational summary completed on March 11, 2019 states that Snover did not have any past relevant work performed at the sedentary level.  (ECF No. 11, PageID.395).  Thus, a finding that Snover was limited to sedentary work would direct a finding of disability.

## VI.   Conclusion

For the reasons set forth above, it is RECOMMENDED that Snover's

motion (ECF No. 13) be GRANTED, that the case be remanded under sentence

four of 42 U.S.C. § 405(g), and that the Commissioner's motion (ECF No. 14) be

DENIED.

Dated: July 12, 2021                                 s/Kimberly G. Altman
Detroit, Michigan                                    KIMBERLY G. ALTMAN
                                                     United States Magistrate Judge

## **NOTICE TO PARTIES REGARDING OBJECTIONS**

The parties to this action may object to and seek review of this Report and

Recommendation.  Any objections must be filed within 14 days of service, as

provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).

Failure to file specific objections constitutes a waiver of any further right of

appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health &

Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health &

Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of

Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Under Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

23

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 12, 2021.

s/Marie E. Verlinde
MARIE E. VERLINDE
Case Manager