UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

BRUCE SNOVER,

      Plaintiff,                       Case No. 20-11564
                                          Honorable Victoria A. Roberts
v.                                    Magistrate Judge Kimberly Altman

ANDREW SAUL,
Commissioner
of Social Security,

      Defendant.
_____/

**ORDER: (1) OVERRULING DEFENDANT'S OBJECTIONS [ECF No. 18];
(2) ADOPTING REPORT AND RECOMMENDATION [ECF No. 17]; (3)
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF
No. 14]; (4) GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT [ECF No. 13]; and (5) REMANDING THE CASE FOR
FURTHER PROCEEDINGS**

**I.    INTRODUCTION**

    This matter is before the Court on the Report and Recommendation

("R&R") filed by Magistrate Judge Kimberly Altman on July 12, 2021.

[ECF No. 17]. The R&R recommends that the Commissioner's decision

to deny Bruce Snover Supplemental Security Income ("SSI") and

Disability Insurance Benefits ("DIB") be remanded for further

proceedings. The Commissioner objects.

The Court reviewed this matter *de novo* pursuant to 28 U.S.C. § 636 and finds the R&R to be correct. The Court **ADOPTS** it.

## II.   <u>BACKGROUND</u>

Bruce Snover ("Snover") is 56 years old; he was 51 when he filed his application for SSI and DIB benefits in September 2016. Snover worked as a consultant, operations manager, and security guard. Snover alleges that he became disabled on August 18, 2016, due to stage three rectal cancer, diabetes, and hypertension. [ECF No. 11, PageID.264].

On April 1, 2019, Administrative Law Judge ("ALJ") Stephanie Katich denied Snover's claim for benefits and decided that he was not disabled. Snover filed a timely request for review of the hearing decision with the Social Security Administration's Appeals Council. The Appeals Council denied Snover's request for review. The Commissioner's decision became final.

Snover filed a complaint in federal court and the Court referred it to Magistrate Judge Kimberly Altman under 28 U.S.C. § 636(b)(1)(B). Both parties filed motions for summary judgment.

On July 12, 2021, the Magistrate Judge recommended that Snover's Motion for Summary Judgment be granted and that the case be remanded for further proceedings. The Magistrate Judge also

2

recommended that upon remand, the ALJ should reconsider the exertional requirements stated in the ALJ's Residual Functioning Capacity ("RFC"), discuss the effect of neuropathy on Snover's post-chemotherapy exertional abilities, and consider whether the record supports an award of benefits for any 12-month period or more within the relevant period.

**A. Relevant Medical History**

At issue are two contrasting medical reports: Dr. Dale Blum's M.D. ("Dr. Blum") and Dr. Oxana Rusher's M.D. ("Dr. Rusher").

On June 12, 2017, Dr. Blum conducted a non-examining review of Snover's medical evidence from April 2014 to July 2017 on behalf of the Social Security Administration. [ECF No. 11-3, PageID.128]. In his residual functioning capacity assessment, Dr. Blum determined that Snover was severely impaired by colon, rectum or anus malignant neoplasm, diabetes mellitus, essential hypertension and peripheral neuropathy. [Id., PageID.124]. He determined Snover could lift 20 pounds occasionally and 10 frequently; sit, stand, or walk for six hours in an eight-hour workday; and perform limited pushing/pulling in the upper and lower extremities. [Id., PageID.125]. He found that Snover could climb, stoop, and crawl occasionally but could balance, kneel, and crouch frequently. [Id.,

3

PageID.126]. He described Snover's colon malignant neoplasm as the primary priority. He also determined that Snover's statements about the intensity, persistence and functional effects of the symptoms were not substantiated by the objective medical evidence alone. [Id., PageID.124]. Based on his findings, Dr. Blum concluded Snover was not disabled. *Id*., PageID.129].

On July 31, 2017, Dr. Rusher completed a medical source statement. She noted that as a result of cancer treatment, Snover experienced pain and numbness of the arms and legs and swelling of the feet. [Id., PageID.822]. She found that the condition could be expected to last at least 12 months. She also found that Snover would be required to take eight to nine unscheduled breaks in an eight-hour workday with each lasting at least one hour and that he would be off task 20 percent of the workday. Finally, she found that due to physical symptoms he would likely miss more than four days of work each month. *Id*.

### III.   ANALYSIS

Under Federal Rule of Civil Procedure 72(b)(3), a district judge is required to determine *de novo* any part of a magistrate judge's report and recommendation that has been properly objected to. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); 28 U.S.C. § 636(b)(1)(C).

4

The Court reviews the final determination of the Commissioner to decide whether it is supported by substantial evidence. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). Where substantial evidence supports the ALJ's decision, the Court "defers to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley v. Comm'r Of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (internal quotations omitted).

The Court must also decide if the ALJ applied the correct legal standard in the disability determination. *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009). The Court will not uphold a Commissioner's decision where the Social Security Administration fails to follow its own regulations and where that error prejudices a claimant

on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir.2007); *See also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545–46 (6th Cir. 2004) (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### A. Objections

The Commissioner offers four objections. The R&R: (1) incorrectly characterized the evidence and misapplies the substantial evidence standard of review; (2) incorrectly applied the "treating source rule" to the ALJ's evaluation of Dr. Rusher's opinion; (3) reweighed the evidence regarding Plaintiff's self-reported functioning; and (4) erred as a matter of law in finding Plaintiff's peripheral neuropathy impairment "undermine[s] the finding that Snover was capable of exertionally light work."

Because these arguments overlap, the Court addresses them together.

Preliminarily, all agree that Snover experiences peripheral neuropathy and that the other conditions he suffers from could impact it. The parties largely agree on the ALJ's characterization of Snover's medical

6

records pre-July 2017. However, the parties disagree on the extent

Snover's peripheral neuropathy functionally limits his abilities and whether

the RFC accurately captured his limitations.

The Commissioner's objections can be divided into two categories:

alleged factual errors and legal errors.

## 1. Factual Error – Whether the R&R incorrectly characterized the Content of Snover's treatment notes

The Commissioner argues the R&R factually erred because it

wrongly suggests the record reflects "significant neurological deficits"

when the record actually reflects Snover's subjective complaints of

neurological deficits. The objective physical examinations, the

Commissioner says, reveal that Snover presented with normal or intact

gait, lacked sensory deficits, and had normal neurological findings.

The Magistrate Judge took issue with the ALJ's finding that Snover

"did not experience significant neurological deficits (other than some

decreased sensation in his hands and feet)." [ECF No. 17,

PageID.1411]. She believed this characterization of the medical records

from July 2017 forward grossly understated, if not misstated, Snover's

treating records, which – in her opinion – showed significant and

persistent symptoms of lower extremity pain and numbness. The Court
agrees.

The following are examples of Snover's treating physician's findings
based on a combination of Snover's subjective complaints and the
physicians' own medical expertise. On October 2, 2017, Dr. Rusher
noted that Snover "reports continued peripheral neuropathy. He has
some improvement in the sharp pinprick pain in the legs and arms since
increasing gabapentin but continues to have pain and numbness in the
hands and feet." [ECF No. 11-11, PageID.1084]. On July 10, 2018,
Physician Assistant Caitlin Christine Meservey noted that Snover's gait
was intact although Snover's complained of persistent peripheral
neuropathy "likely exacerbated by uncontrolled diabetes" *Id*. at 1030. On
January 21, 2019, Dr. Rusher commented in the clinical notes portion of
her report that "patient's main complaint is persistent neuropathy,
exacerbated by diabetes…[Snover's] [n]europathy limits function and
patient is unable to work." *Id*. at 995.

Dr. Rusher's July 31, 2017 report is the clearest example of her
conclusion as a treating doctor that functional limitations resulted from
Snover's peripheral neuropathy. She concluded that in part due to
Snover's peripheral neuropathy, he would require unscheduled breaks 8

to 9 times per day which would result in him being off task 20% of the time. She further noted Snover would likely be absent from work as a result of impairments or treatment more than 4 days per month. *Id*.

The R&R did not incorrectly characterize the content of Snover's treatment notes. The treatment notes did rightfully reflect Snover's subjective complaints, and those complaints were substantiated by Dr. Rusher, Meservey and others. The Magistrate Judge correctly concluded that the treating records from March 2017 to January 2019 reflect treaters' conclusions that Snover's functional abilities were significantly curtailed by neuropathy.

## 2. Legal Error – Whether the R&R reweighed the relative import of Snover's treatment notes

The Commissioner says the R&R erred because it reweighed the evidence it believed demonstrated "significant neurological deficits" and improperly called into question the ALJ's reliance on Dr. Blum's opinion. The Commissioner contends that the Magistrate Judge conducted her own *de novo* review of the relative importance of those treatment notes, supplanting not only the ALJ's evaluation of the evidence, but also Dr. Blum's medical findings that explicitly considered objective evidence of peripheral neuropathy.

9

First, the Magistrate Judge was justified in giving weight to Plaintiff's subjective complaints. According to Social Security regulations, when a claimant contends that he is impaired by subjective pain, the Commissioner should consider several factors in determining whether he is disabled, including the intensity and persistence of a claimant's symptoms, objective medical evidence, and the claimant's daily activities. *Spicer v. Apfel*, 15 F. App'x 227, 234 (6th Cir. 2001); 20 C.F.R. § 404.1529(c)(1).

While making the RFC determination, the ALJ thoroughly considered Snover's daily activities. [ECF No. 11-2, PageID.56]. But, the R&R found that the ALJ did not sufficiently consider both the objective medical evidence of the limitations caused by Plaintiff's peripheral neuropathy and the persistence of Snover's symptoms.

The R&R's assessment of the ALJ's error rings true when, for example, the ALJ noted that Snover did not require the use of an assistive device and was able to walk up to one-and-a-half miles at a time [ECF No. 11, PageID.55, 57-58], without acknowledging Snover's testimony that while grocery shopping he relies on the grocery cart for support. [Id., PageID.76, 87]. The ALJ also did not address Snover's statement that he could not stand still without "leaning on a wall." [ECF No. 11-2, PageID.87].

10

An ALJ is required to consider the "relevant factors" in determining the strength of Snover's claims, including "[a]ny measures [used] to relieve . . . pain or other symptoms" 20 C.F.R. §§ 404.1529(c)(3)(vi).

Based on this evidence the ALJ was not *required* to find that the shopping cart or wall acted as an assistant device because the evidence regarding the grocery cart and wall are Snover's subjective statements of his own limitations.

Weighing the evidence, resolving conflicts in evidence, and deciding questions of credibility are the province of the ALJ and not of Courts sitting in review. *See Reynolds v. Comm'r of Soc. Sec*., 424 F. App'x 411, 414 (6th Cir. 2011). Similarly, the ALJ was not required to provide a detailed description for her credibility determination. *Spicer v. Apfel*, 15 F. App'x 227, 234 (6th Cir. 2001). However, it is incumbent upon the ALJ to "explain [her] credibility determinations in [her] decision;…it 'must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.'" *Brooks v. Comm'r of Soc. Sec*., 531 F. App'x 636, 643 (6th Cir. 2013).

Here, the ALJ explained the weight she gave to the state agency's report verses Dr. Rusher's 2017 report, but the ALJ failed to sufficiently

explain the reasons for that weight. The ALJ said that she gives "no weight" to Dr. Rusher's July 2017 opinion because the state agency's 2015 opinion is more consistent with the record and because state agency physicians have been specifically trained in evaluating impairments for the Social Security Administration's disability programs, unlike Dr. Rusher. [ECF No. 11-2, PageID.58]. Dr. Blum was a non-treating source who observed Snover once. Dr. Rusher was a treating source who observed Snover from September 27, 2016 through January 2019.

"When an ALJ relies on a non-examining source who "did not have the opportunity to review" later submitted medical evidence, especially when that evidence reflects ongoing treatment, the Court generally requires "some indication that the ALJ at least considered these [new] facts before giving greater weight to an opinion that is not based on a review of a complete case record." *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 642 (6th Cir. 2013) (remanding because the ALJ failed to account for newer evidence in the record showing signs of mental impairments).

Dr. Blum's report did not have the luxury of over two years of recent medical evaluation. Over the course of those two years Snover's complaints shifted from a primary focus on his colon cancer to the numbness and pain in his extremities. Generally, more weight is given to

opinions that are "more consistent ... with the record as a whole." *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 642 (6th Cir. 2013). It appears the ALJ gave no weight to a report which encompassed the span of Snover's complaints, but instead only considered a non-treating report completed in 2017. This calls into question whether the ALJ's disability determination is supported by substantial evidence.

The Commissioner says these errors are not outcome determinative because Dr. Rusher's opinion had little to no relevance on Plaintiff's ability to perform exceptionally light work. The Court disagrees. Affording no weight to Dr. Rusher's report is relevant to the analysis of Snover's ability to perform light work because the vocational expert testified that an individual cannot take unscheduled breaks at will and perform the job of a security officer [Tr. 71]. Yet, the ALJ found that the Plaintiff can return to such work.

The Magistrate Judge's remand recommendation without a reward of benefits means that she did not make an ultimate decision that one opinion should be valued over the other: she decided that because one newer treating physician opinion was not given any weight there is a question as to whether substantial evidence supports the ALJ's decision. This Court agrees.

## IV.   CONCLUSION

The Court concludes that the Magistrate Judge properly reviewed the administrative record and applied the correct law to reach her conclusion. The Court considered all of the Commissioner's objections to the R&R and finds they lack merit.

The Court **OVERRULES** Defendant's objections and **ADOPTS** Magistrate Judge Altman's R&R.

The Court **DENIES** Defendant's Motion for Summary Judgment. The Court **GRANTS** Plaintiff's Motion for Summary Judgment; the case is remanded for further proceedings.

Judgment of **REMAND** will enter.

**IT IS ORDERED**.

s/ Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  August 26, 2021